691 So.2d 839 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
In the Interest of DJ, Defendant-Appellant.
No. 29474-JAK.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
Alex Rubenstein, Shreveport, for Juvenile-Appellant.
Paul J. Carmouche, District Attorney, Lisa A. Rule and Tommy J. Johnson, Asst. District Attorneys, for Plaintiff-Appellee.
*840 Before NORRIS, WILLIAMS and CARAWAY, JJ.
NORRIS, Judge.
The juvenile, D.J., appeals from his adjudication as a delinquent based upon his commission of sexual battery, a violation of La. R.S. 14:43.1. For the following reasons, we affirm.

Factual background
On Wednesday, June 19, 1996, the victim, five-year-old S.T., and several other children were watching television in the home of S.T.'s mother in Shreveport. According to S.T.'s mother, the subject of buttocks came up and S.T.'s four-year-old brother, C.T. (a/ k/a "Braxton" and "Bubba"), told his mother that a person the children called "D.D." had hurt S.T.'s "butt." When S.T.'s mother asked S.T. if anyone had hurt her, S.T. stated that "D.D." had "stuck his wiener in her behind and her coochie," meaning that "D.D." had put his penis into the child's anus and vagina. S.T.'s mother asked when this had occurred, and S.T. stated once when Tasha, the family's babysitter, told the children to go into the house and once when everyone else in the house was asleep.
S.T.'s mother knew that "D.D." (a/k/a "Duke") was the children's name for the 14-year-old juvenile appellant, D.J., who had been living with the family on and off for about three months. Although D.J. was not in the home on the day S.T. revealed the sexual assault to her mother, he had been there the previous week before leaving for good on either Friday or Saturday. S.T.'s mother recalled being away shopping on one of these days and leaving her children with D.J. and the babysitter, 15-year-old Tasha Marshall. Tasha testified that D.J. was alone with the children on several occasions during this time and had, as part of a game she and D.J. played, locked her out of the house for about 15 minutes.
After her daughter told her what had happened, S.T.'s mother called the Shreveport Police Department. Officer Allain Jones responded to the call that same day. Officer Jones testified that S.T.'s mother related the incident and named D.J. as the perpetrator in S.T.'s presence. S.T. reported to Officer Jones that "he stuck his wee wee in her private area," referring to D.J. without calling him by name.
After an initial trip to a local clinic, S.T. was examined on June 24 at L.S.U. Medical Center by Dr. Ann Springer, an expert in pediatrics with a sub-specialty in child abuse. Her examination revealed that S.T.'s entire hymen was attenuated and destroyed. Because the damage to the vaginal area had healed and scarred, Dr. Springer estimated that the trauma had occurred at least 10 to 14 days prior to the examination. Dr. Springer also noted that S.T.'s anal examination revealed no trauma to that region, but explained that the absence of such evidence was common even in children who had been anally molested because of the tough elastic nature of the anal tissue. Dr. Springer opined that S.T. had been sexually molested and penetrated vaginally.
After questioning S.T. and her mother, Officer Jones referred the matter to Detective Barry Beck of the juvenile division of the Shreveport Police Department. Following Dr. Springer's examination, Detective Beck interviewed S.T. and her mother. Detective Beck testified that he used anatomical drawings to question S.T. After S.T. identified the "private parts," Detective Beck asked if anyone had touched her in this location, and S.T. replied that "D.D." had done so. In answer to further questions from Detective Beck, S.T. stated that "D.D." had placed his "wee wee" in her "coochie" and her "booty." According, to Detective Beck, she placed an "X" on the vaginal area and on the buttocks area of the anatomical drawings to identify these locations.
S.T. disclosed that "D.D." had committed these acts in the hallway and the TV room of her house and that "D.D." had said she was his girlfriend. Detective Beck asked S.T. if anyone else was present when these incidents occurred; S.T. named Tasha, the babysitter, and C.T., her own brother. Detective Beck then questioned C.T., who told him that "D.D." had made him "hunch" S.T. C.T. also told Detective Beck that "D.D." put his "wee wee" in S.T.'s "coochie" and "booty." C.T. *841 further revealed that "D.D." told him he would get C.T. in trouble.
After Detective Beck interviewed S.T., C.T. and their mother, and learned that "D.D." was D.J., he arrested the juvenile. The state filed a delinquency petition against D.J. charging that he had committed aggravated rape of S.T., a violation of La.R.S. 14:42. A delinquency hearing followed.
S.T. testified at the hearing. The state examined her using mostly leading questions that required only a yes or no answer. S.T. did not answer several of the questions regarding the alleged sexual attack and some of her answers were unintelligible. However, S.T. did point out D.J. as the person she knew as "D.D." She also affirmatively responded to questions concerning whether "D.D." had lived at her house and whether she, C.T. and "D.D." were ever alone in the house. Further, she answered yes to questions that either she or "D.D." took her clothes off and that "D.D." touched her. S.T. also indicated that this touching hurt her and was in her "private area." When the state asked S.T. to point to the part of her body that "D.D." touched, the child replied "I can't." S.T. did testify that her brother, C.T., was in the house with her when "D.D." touched her.
Later, the state recalled S.T., but again had difficulty in eliciting responses from the child. The state used generic drawings of the human body to question S.T. On the first drawing, representing herself, S.T. placed an "X" to mark her "private parts." In response to the State's question as to where she was touched, S.T. then circled the genital area and buttocks of the drawing. However, S.T. did not respond to questions about whether "D.D." was the person who had touched these areas. On another drawing, presented to S.T. as one of a male, she placed an "X" on the "private parts." When instructed to circle the "private part" of the male that touched her, S.T. drew a circle around the genital region of the male drawing. Again, however, she did not state that D.J. had touched her private areas with his penis. The trial court admitted both drawings into evidence.
There was also testimony that another man was staying at the home of S.T.'s mother. D.J.'s mother (who was formerly friends with the victim's mother) and Tasha testified that Donald "Don" Ware, the ex-boyfriend of S.T.'s mother, was "in and out" of the family home. Tasha stated that Ware sometimes spent the night. D.J.'s mother testified that she had once lived with S.T.'s mother and that Ware had a key to the house. She also stated that S.T.'s mother knew that Ware had a "criminal background." S.T.'s mother admitted that she knew Ware had spent some time in jail, but denied knowing that Ware, according to defense counsel, had been convicted of two counts of crime against nature. Both S.T.'s mother and Tasha testified that Ware was never left alone with the children.
D.J. testified and denied that he had ever engaged in any sexual conduct with S.T. He admitted that he was at the home of S.T.'s mother around the time in question and had lived there for approximately a month and a half. D.J. claimed that he left because of an altercation with C.T., S.T.'s brother. D.J. testified that because of this incident, S.T.'s mother cursed at him, and he then left her house. D.J. said that once he left, he never returned.
D.J.'s mother testified that her son returned from the home of S.T.'s mother on a Wednesday. However, on cross examination she stated that she worked during the day and could not account for his whereabouts until she arrived at home in the evening.
At the conclusion of testimony, the juvenile court judge found that D.J. had committed sexual battery upon S.T., a responsive verdict to aggravated rape. At a subsequent proceeding, he committed D.J. to the custody of the Department of Corrections for a time period not to exceed two years. From that ruling, D.J. appeals, urging two assignments of error. First, he contends that the court erred in finding that the state proved beyond a reasonable doubt the elements of sexual battery. Second, D.J. submits that the court erred in finding that there was sufficient evidence to sustain an adjudication of delinquency.

*842 Applicable law

Courts of appeal have appellate jurisdiction over all matters appealed from family and juvenile courts; appellate review in juvenile cases extends to both law and facts. La. Const. Art. 5, § 10. "The determination of guilt or innocence, the detention, and the custody of a [juvenile] who is alleged to have committed a crime * * * shall be pursuant to special juvenile procedures which shall be provided by law." La. Const. Art. 5, § 19.
The Louisiana Children's Code, enacted in 1992, provides that "[a]ll rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana * * * shall be applicable in juvenile court proceedings[.]" La. Ch.C. art. 808. Therefore, in delinquency proceedings the state must prove beyond a reasonable doubt that the child committed every element of the offense alleged in the petition. La. Ch.C. art. 883. The standard is no less strenuous than the burden of proof required in a criminal proceeding against an adult. State in the Interest of R.E.B., 26,468 (La.App. 2d Cir. 9/21/94), 643 So.2d 287; State in the Interest of J.W., 597 So.2d 1056 (La.App. 2d Cir.1992).
Further, on appeal, the standard of review for the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
La.R.S. 14:43.1A defines sexual battery:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
La.C.E. art. 801D(1)(d) provides that a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
Comment (e) to Article 801D(1) states:
The approach taken under Part (d) of subparagraph (D)(1) minimizes confrontation problems. It is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision. Subsequent complaints or reports about the same crime would not be admissible under it. (Citations omitted.)
Further, under La.C.E. art. 801D(1)(d), the victim's trial testimony must be consistent with her earlier statements. In State v. Moran, 584 So.2d 318 (La.App. 4th Cir.), writ denied, 585 So.2d 576 (1991), the court stated:
Under Art. 801(D)(1)(d), the victim must testify at trial consistently with the content of the initial complaint and be subject to cross-examination. These requirements alleviate the reliability problems inherent in ordinary hearsay. If, for any reason, the victim failed to testify consistently, for example, by either inexplicably failing to recall the event or by testifying to a version that differs from the alleged initial complaint, the initial complaint would fail to meet the requirements of the rule.
584 So.2d at 323 (citations omitted).

Discussion
Both of D.J.'s assignments of error address the sufficiency of the evidence. Specifically, he challenges his identity as the assailant and the date of the offense. In connection with his argument that S.T.'s testimony did not prove, beyond a reasonable doubt, that he was the perpetrator, D.J. contends that the state used hearsay testimony. Although the testimony of the two investigating *843 police officers may arguably have been hearsay, we conclude that the testimony of S.T.'s mother was not hearsay and was admissible under C.E. art. 801D(1)(d) as S.T.'s initial complaint of sexual assault. S.T. revealed to her mother that "D.D.," the child's nickname for D.J., "stuck his wiener in her behind and her coochie." S.T. told her mother that this incident occurred on two occasions, including once when she was inside the family home while her babysitter, Tasha Marshall, remained outside the house. Tasha corroborated this portion of S.T.'s statement.
The evidence shows that the above statement, spontaneously made by S.T. in response to her mother's questions, was the child's first complaint that she had been molested. A child victim's initial complaint is often in the form of responses to the questioning an adult who draws the story from the child. State v. Free, 26,267 (La.App. 2d Cir. 9/21/94), 643 So.2d 767, writ denied, 94-2846 (La. 3/10/95), 650 So.2d 1175. Further, counsel for D.J. concedes in brief that S.T. was available at trial, although the record does not indicate that she was cross-examined.
Moreover, D.J. raised no objection at trial to the testimony of S.T.'s mother and Detective Beck on hearsay grounds. The failure to object to this testimony as hearsay precludes raising that ground for objection for the first time on appeal. La. C.Cr.P. art. 841; State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1259 (1990).
We further conclude that S.T.'s testimony, while omitting certain details present in her initial statement, was not inconsistent with that statement. The young child indicated that either she or "D.D." removed her clothes when they and her brother were alone in the house. S.T.'s affirmative answers also revealed that "D.D." hurt her and touched her "private areas," which she identified with circles on the drawings as areas consistent with the location of her vaginal and anal regions. In addition, details such as S.T.'s use of her nickname for D.J. and the assault occurring in her younger brother's presence were consistent with the initial complaint to her mother. Finally, five-year-old S.T. understandably seemed frightened by the court proceedings and embarrassed in recalling the sexual assault. Such factors undoubtedly explain her difficulty in testifying about such a traumatic event.
D.J. also challenges the evidence as too inconsistent to prove beyond a reasonable doubt the time of the alleged offense. In support he cites his own mother's testimony that he returned from S.T.'s family home on a Wednesday; this contradicts the testimony of S.T.'s mother, who stated D.J. left on a Friday or Saturday following commission of the offense.
The actual date the offense is alleged to have occurred is not an essential element of the offense. La.R.S. 14:43.1; State v. Cleveland, 25,628 (La.App. 2d Cir. 1/19/94), 630 So.2d 1365. Instead, the evidence established the acts at a time when S.T.'s mother was away from home and D.J. was at the house with S.T. Tasha's testimony placed D.J. alone inside the house with S.T. and C.T., thereby providing D.J. an opportunity to commit the offense upon S.T. Dr. Springer provided medical evidence corroborating the estimated date of S.T.'s molestation. Her expert opinion was that the destruction of S.T.'s hymen and the healing and scarring of the vaginal region indicated trauma ten to fourteen days prior to examination of June 24. Such a period would be consistent with the time frame placing D.J. alone with the children in the house after locking Tasha outside.

Conclusion
For the reasons expressed, we affirm D.J.'s adjudication of delinquency and judgment of disposition for his commission of sexual battery upon S.T.
AFFIRMED.