MOORE, J.
hThe juvenile, PRR, appeals a judgment adjudicating him a delinquent for committing the offense of indecent behavior with juveniles, La. R.S. 14:81, involving his female three-year-old cousin, PR. For the reasons expressed, we affirm.

Factual Background

On the afternoon of February 6, 2007, Betty Hodges took three of her children to a fish fry at their “Pop Johnny’s” house on Hwy. 71 in Ida, a town in north Caddo Parish. The three children were her little girl, PR (3 years and 11 months old), and her two boys, RH and ZM (ages 6 and 8, respectively); Pop Johnny is the children’s uncle. Across the highway lived the children’s “granny,” with their cousin, 16-year-old PRR, and his sister, Heather. Granny is also PRR’s grandmother.
At some point, the three children wanted to visit their granny, so PRR came and walked them across the road. (Betty thought that Heather also walked them to Granny’s.) A while later, PRR walked them back to Pop Johnny’s, but the two little boys ran ahead, leaving PRR and PR alone together for a few moments. Betty saw nothing, as she was inside Pop Johnny’s trailer nursing a toothache. Heather testified that she was standing out by the road, waiting on a ride to church; PRR and PR were always within her sight, and she saw nothing untoward happen between them. A short while later, Betty took the children back to their home in Oil City, and nobody mentioned that anything had happened.
The following evening, according to Betty, PR “brought up the differences in pee-pees,” meaning men’s and women’s private parts. When |?Betty asked why she was asking, PR replied that PRR “stuck his peepee in me” and he “had a big one.” Betty then recalled that PR’s clothes had smelled unusually bad the previous day, even though the children were not playing in the nearby creek. Betty testified that the next day, she took PR to eight different doctors, the first seven of whom (inexplicably) refused to see her; only the final one, at the Cara Center at Christus Schumpert Health Center, examined her. She also called the police that day, initially telling a deputy that both of PRR’s parents were in prison for child molestation. She admitted that this accusation was false.
*1140 Deputy Dorothy Brooks confirmed that she received a call on February 9, in which Betty reported that PR said her vagina was hurting. Dep. Brooks immediately arranged for the three children to be interviewed at Gingerbread House.
In the interview, which was videotaped, PR told the social worker that PR “was sticking his peepee in me,” that this occurred behind a tree at Pop Johnny’s, and that PRR lived with granny. The two boys told the social worker that they had run ahead and did not see anything happen, although ZM said he saw PRR holding PR by the hand as they came from behind a tree on granny’s side of the road. Both boys stated that PRR had never touched them in a sexual way.
Dr. Jennifer Rodriguez, a pediatrician at LSU HSC and the Cara Center, performed a colposcopic exam and found redness of PR’s labia majora and minora. This could be ascribed to various causes, such as urine, but Dr. Rodriguez suspected sexual abuse because PR told her that PRR |s“put his peepee on me.” While the child’s hymen and anus were intact, the doctor wrote that her symptoms were “consistent with the abuse if recent but not diagnostic of [it].”
Dep. Brooks testified that once she determined that PRR was 16 and PR only 3 years old, she recommended a charge of aggravated rape. Over a year later, in August 2009, the state filed the instant petition charging PRR with indecent behavior with juveniles.
At trial in November 2009, the state’s witnesses testified as outlined above. PRR’s sister, Heather, testified in his defense. While she agreed that PR was alone with PRR for two or three minutes, she (Heather) insisted that she could see them the whole time and nothing happened. Heather testified that PR wet her pants often, although Betty insisted the child had been potty trained since the age of 12 months. Heather also testified that Betty and her husband, Jason, regularly went to Pop Johnny’s trailer to smoke marijuana together, but Betty maintained that nothing like this had happened in at least the last 10 years.
PRR recently joined the Marines and was stationed at Camp LeJeune, North Carolina. He waived his rights and testified that he spent most of the afternoon of the fish fry in his bedroom at granny’s house, playing on his PlayStation, feeling glum because he had broken up with a girlfriend just the day before. However, the three kids came over for about 20 minutes, after which he walked them back across the highway, holding PR by the hand. On cross-examination, he admitted that he initially told Dep. Brooks that he walked the kids across the highway both to and from granny’s house, |4and that he spent some time outside with them.
Action of the Juvenile Court
The court ruled from the bench that PR’s recorded statement at Gingerbread House was “highly credible,” with the “extremely articulate” victim supplying details “without prompting,” leaving the court no doubt but that the incident occurred. The court noted that the credibility of PR’s mother was challenged, but not in a manner to undermine the victim’s account of the incident. Specifically, the court found no motive on Betty’s part to manufacture charges and frame PRR. The court restated the medical findings, ultimately accepting Dr. Rodriguez’s conclusion that the redness was consistent with recent sexual abuse, though not diagnostic of it. The court dismissed Heather’s testimony as “almost too adamant” and “almost rehearsed” for an incident occurring two years earlier, and tinged with a possible motive to help her brother; the court also noted that Pop Johnny was not called to corroborate her or PRR. Finally, the court *1141 rejected PRR’s testimony as inconsistent with his statement to Dep. Brooks just days after the event, as well as with the recorded interviews with PR, RH and ZM. Finding the incident occurred just as PR alleged, the court adjudicated PRR delinquent.
After a dispositional hearing in December 2009, the court committed PRR to the Office of Juvenile Justice until his 21st birthday with a recommendation for secure care. This appeal followed.
| ⅛Discussion
By one assignment of error, PRR urges the evidence was insufficient to find that he committed the offense of indecent behavior with juveniles. He contends that the medical evidence was inconclusive, the victim’s testimony was not as unprompted and credible as the juvenile court found, and his sister completely corroborated the fact that he did nothing to PR.
The state responds that the evidence was sufficient since medical testimony is not required and victim’s account was found to be credible. The state does not address PRR’s trial testimony or the contention that it was corroborated by his sister.
The appellate review of juvenile cases extends to both law and facts. La. Const. Art. 5, § 10. All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana apply to juvenile court proceedings. La. Ch. C. art. 808. In delinquency cases, the state’s burden of proof beyond a reasonable doubt is no less strenuous than the burden of proof required in a criminal proceeding against an adult. La. Ch. C. art. 883; State ex rel. DPB, 2002-1742 (La.5/20/03), 846 So.2d 753; State In Int. of DJ, 29,474 (La.App. 2 Cir. 4/2/97), 691 So.2d 839.
The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State In Int. of DJ, supra. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Marshall, 2004-3139 (La.11/29/06), 943 So.2d 1 362; State In Int. of KMT, 44,731 (La.App. 2 Cir. 8/19/09), 18 So.3d 183. A reviewing court accords great deference to the factfinder’s decision to accept a witness’s testimony in whole or part. State v. Marshall, supra; State In Int. of KMT, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Marshall, supra; State In Int. of KMT, supra. This principle is equally applicable to victims of sexual assault; such testimony alone is sufficient even when the state offers no medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Taylor, 43,901 (La.App. 2 Cir. 2/25/09), 3 So.3d 677, writ denied, 2009-0687 (La.12/11/09), 23 So.3d 911, and citations therein.
As it applies to this case, indecent behavior with juveniles is defined as any lewd or lascivious act upon the person or in the presence of any child under the age of 17, when there is an age difference of greater than two years between the two persons, and with the intention of arousing or gratifying the sexual desires of either person. La. R.S. 14:81 A. A “lewd and lascivious” act means that the person knowingly engaged in “any overt sexual activity performed in the physical proximity of a child.” State v. Interiano, 2003-1760 (La.2/14/04), 868 So.2d 9 (emphasis in original).
*1142 On close examination, we agree that the state sufficiently established the essential elements of the crime. In her videotaped statement at Gingerbread House, PR told the social worker that PRR “was sticking his |7peepee in me,” and made consistent statements to her mother, Dep. Brooks and Dr. Rodriguez. We cannot disturb the juvenile court’s decision to accept this portion of her testimony.
At the same time, we are not untroubled by other aspects of the case, ably argued by PRR in brief. For example, PR told the social worker that the offense occurred while she was “sitting up” and PRR was “in front of me,” a physical configuration that is hard to imagine. PR initially told the social worker that she did not see PRR’s peepee, but then in response to a leading question, she agreed that she did; this cannot be the unprompted testimony cited by the juvenile court. Then, when the social worker asked if anything came out of PRR’s peepee, PR said it was “black,” which simply does not describe semen. However, we must defer to the juvenile court’s assessment of credibility, ascribing these fairly serious inconsistencies to the three-year-old’s lack of experience in expressing such things. We also note that the bulk of PR’s consistent statements to the deputy and the doctor actually came from her mother Betty, who admitted giving deputies false information about PRR in the early phases of the investigation and did not attempt to explain why seven doctors refused to examine PR on February 8. On the cold record, this woman’s conduct and motives appear much more suspect than the juvenile court found, but again we are constrained to defer to the factfinder’s credibility call. Apparently, Betty’s statements to Dr. Rodriguez influenced the doctor’s opinion, as the objective findings were rather equivocal. As noted, however, no medical evidence whatsoever need be adduced to support the requisite factual finding of sexual activity.
|8On the crucial question of whether PRR performed a lewd and lascivious act with the intention of arousing or gratifying his own or the victim’s sexual desires, the juvenile court accepted PR’s statement and we cannot disturb that decision. That statement is sufficient to prove beyond a reasonable doubt that PRR committed the offense of indecent behavior with juveniles. The assignment of error lacks merit.

Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, the adjudication and disposition are affirmed.
AFFIRMED.