589 So.2d 1139 (1991)
STATE of Louisiana In the Interest of D. McK.
No. 91-KA-380.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 1991.
*1140 A. Bruce Netterville, Gretna, for juvenile/appellant.
John M. Mamoulides, Dist. Atty., Gaynell Williams, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
Before GAUDIN, GRISBAUM and WICKER, JJ.
WICKER, Judge.
D. McK., a juvenile, appeals his adjudication and disposition on the issues of the judge's alleged failure to follow sentencing guidelines and of ineffective assistance of counsel resulting in the admission of hearsay testimony and inadmissible evidence. We affirm.
D. was charged with violation of La.R.S. 40:967 A, possession of and intent to distribute cocaine. His record shows that in August of 1987, when he was fourteen, D. was placed on probation for simple criminal damage and simple battery. He was acquitted of a charge of simple burglary of an automobile in November of 1989. He pleaded guilty to a charge of criminal trespassing in February of 1990 and was placed on probation. During his term of probation, his mother, Juliette Harrison, called his probation officer to complain that D. was not following the rules or obeying curfew. He tested positive for cocaine and *1141 was referred to a substance abuse clinic but failed to follow up.
Later in 1990, D. was charged with four counts of selling crack cocaine to an undercover officer. The dates of the charges were December 9, 16, 17, and 30. These dates were incorrect, and on the date of trial the district attorney amended one charge to reflect the proper date: October 16, 1990. The three other counts were continued without date.
Wilke Declouet, a narcotic agent with the Jefferson Parish Sheriff's Office, testified he purchased crack cocaine from D. on October 16th and on three other occasions. [These three other dates were the counts which were continued without date.] The agent was introduced to D. by a confidential informant. The CI gave Declouet D.'s beeper number, and the CI put in the call and made the arrangements for the sale. On cross examination, D.'s attorney asked Declouet, "On how many different occasions did you purchase drugs from D.?"
Agent Lore testified that he saw D. sell the crack cocaine to Declouet. On cross-examination, he said cocaine was purchased from D. more than twice.
Juliette Harrison testified that D., her son, did not own the articles of clothing the agents testified D. was wearing at the time of the sale. However, she noted that a man named Ben, who lives in a nearby apartment, looks so much like D. that she has mistaken the one for the other. This Ben wears the kind of clothes the agents said D. was wearing and also drives the kind of automobile that the agents said D. arrived in to consummate the deal. She said her son didn't need to sell drugs.
D. testified that he didn't sell cocaine, he never sold any drugs, and he never saw the officers who testified. The officers were talking about Ben, Merlin, and Brian. He doesn't own the clothing testified to, has no beeper, and never rode in Ben's car. In fact, he has no drivers' license although he does drive his mother's car to the grocery and to the probation office.
The judge adjudicated D. a delinquent. Following this, she held a dispositional hearing. There was a Progress Note from Juvenile Services dated February 6, 1991, to consider:
[D.] is not motivated to make any commitment in that direction [toward dealing with his drug problem].... If the patient is found guilty, he does not appear amenable to any drug rehab with this level of denial. He should be handled appropriately by the judicial legal system.
The Probation Report noted that D. had a negative attitude, was not amenable to treatment, was involved in an act of rebellion with other detainees at Rivarde, had behavior demonstrating an unwillingness to change, had an overall attitude which had not been a request for treatment, was not amenable to treatment, and had behavior problems which continued to escalate even in detention. The report concluded,
Due to the serious nature of his crime and the lack of insight of the destruction that he could cause society, it is recommended... that D. be committed to the Department of Corrections for the appropriate time deemed necessary by this Court.
Peggy Bijou, D.'s probation officer, testified that her report was based upon interviews with D. and his mother, conferences with D., looking at his school records, and a conference with his psychiatrist. She noted D. was in total denial, denying his drug problem and even that he had been adjudicated on a cocaine charge. She thought D. would not be a successful candidate for intensive probation.
D. testified that he didn't sell cocaine and should not be sentenced to serve time at Louisiana Training Institute. He thought he should be on extended probation since he was doing well on probation before this charge messed him up. He did admit on cross-examination that he used cocaine while on probation, came in late despite his curfew, and had problems at Rivarde.
Mrs. Harrison testified that her son was not a bad child and would do better this time. She said he had gotten in with the wrong crowd but he was going to come back to church and leave that crowd alone. *1142 She was planning to move away from the neighborhood and cut her working hours to be able to pay attention to what's going on.
The judge sentenced D. to five years in Louisiana Training Institute with credit for time served. Reasons were not articulated until three months after D.'s sentencing and after his appeal had been filed. The judge noted D.'s previous criminal trespass adjudication, his violation of probation, his positive test for cocaine, his failure to follow though with the drug program, and his instigation of and participation in a revolt against the Rivarde staff.
It is clear to this court, based on the juvenile record of this 15 year old [he was actually 16] defendant over the past three years, and his present adjudication for possession with intent to distribute cocaine to an under cover police officer, that [D. McK.] has chosen to follow an escalating course of crime, and has not been responsive to probationary opportunities afforded him in the past. He has repeatedly exhibited disregard for the law and according to his probation officer "lacks insight of the destruction he could cause society."
The report of the psychiatrist and of [D.'s] probation officer indicate that [D.] is not "amenable" to treatment, due to his state of denial and his unwillingness to change. He has refused to take advantage of any efforts aimed at rehabilitation, while exhibiting an increased propensity for committing more serious crimes. It is the opinion of this court that it is evident from the record, including the report of his probation officer, that [D. McK.] is in need of correctional treatment in a custodial environment for the maximum time allowable under the law, not only for the rehabilitative services of the Department of Corrections ... but for his own protection and the protection of society.
D. argues on appeal two areas of error: (1) the judge failed to follow the sentencing guidelines of C.Cr.P. art. 894.1 and failed to consider mitigating circumstances and (2) his trial counsel was ineffective and consequently inadmissible evidence and testimony was allowed in.

SENTENCING GUIDELINES
A juvenile defendant is entitled to the least restrictive disposition consistent with the "circumstances of the case, the needs of the child, and the best interest of society." La.C.J.P. art. 86. This article and La.C.J.P. art. 83 furnish the judge a range of dispositional alternatives and guidelines for selection of one of these alternatives.
The record contains sufficient information available to the judge to support the sentence imposed. There is no requirement that the judge give reasons for sentencing. State in Interest of Winstead, 385 So.2d 311 (La.App. 1st Cir.1980). The alleged failure to consider mitigating factors is of no moment, since D. presented no mitigating factors in his behalf. State v. Horne, 438 So.2d 252 (La.App. 3rd Cir. 1983). We believe the judge did impose the least restrictive disposition consistent with the circumstances of the case, D's needs, and society's interests.

INEFFECTIVE ASSISTANCE OF COUNSEL
Juvenile defendants as well as adults are entitled to effective assistance of counsel. State in Interest of Jones, 372 So.2d 779 (La.App. 4th Cir.1979). Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh. den. 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984) sets out a two-pronged test for proof of ineffective assistance of counsel: he must show that his attorney's performance was deficient and that this deficiency prejudiced him so that the outcome would have been different absent counsel's ineffectiveness.
D. first argues that his attorney should have objected to the date change. However, this was done only after D.'s attorney consulted with him and determined that he had no objection to the change. This is not ineffective assistance of counsel.
D. next argues that his attorney failed to object to introduction of evidence of his other drug sales. We note, in fact, *1143 that some of this testimony was elicited by D.'s attorney himself on cross-examination of Agents Lore and Declouet. We do not believe D. was prejudiced by the introduction of this evidence. Agents Lore and Declouet added nothing to what the judge already knewthat D. was charged with three other drug crimes. The articulated reasons reveal that she did not take these charges into consideration. This evidence did not deprive D. of a fair trial with a reliable result.
Finally, D. argues that his attorney failed to object to the introduction of the certificate of analysis of the cocaine. The state filed a notice of intent to file this certificate on December 12, 1990. The analysis itself was done on January 8th, and the certificate was introduced at the trial on January 9th. However, La.R.S. 15:501 requires the notice of intent with a copy of the certificate to be served on the defendant at least ten days prior to the trial. D.'s attorney should have but didn't object to the introduction of this certificate. Nevertheless, we do not believe that this failure to object deprived D. of a fair trial or changed the outcome of the trial. See State v. Lockett, 542 So.2d 670 (La.App. 5th Cir.1989).
We affirm the adjudication of D. McK. as a delinquent and his subsequent disposition.
AFFIRMED.