| KOSTELKA, J.
After the juvenile, K.G., was adjudicated delinquent for the crime of armed robbery, the trial court ordered him to be continued in the custody of the Department of Public Safety and Corrections until his eighteenth birthday. K.G. now appeals. We affirm the adjudication but vacate the disposition and remand for a disposition hearing.
Facts
At approximately 10:00 p.m. on December 20, 1999, the manager of the Homer, Louisiana, Bill’s Dollar Store, Beverly Ruth Cotty (“Cotty”), and her assistant, Deanne Beatty (“Beatty”), closed the store, set the alarm and exited the building through the front doors. As Cotty attempted to lock the door, two men with bandanas covering their faces ran toward the women on the sidewalk, which was located in the front of the establishment. One of the men grabbed Cotty around the *719 neck, put a gun to her neck and threatened to kill her if she moved or said anything. The other man grabbed Beatty and put his hand on her shoulder; his other hand was in his pocket.
Cotty recognized the man who held the gun on her as Dan Mitchell and the other assailant as B.F., a juvenile at the time the offense occurred, because both frequented the store and the victim recognized their voices.
Cotty opened the door and Mitchell forced her into the store. B.F. and Beatty followed. Still holding the gun at Cotty’s head and his arm around her neck, Mitchell shoved Cotty toward the alarm and ordered her to disarm it. Cotty complied with Mitchell’s demand. Mitchell then ordered Cotty to take him to the safe and shoved her in the direction of the office. Mitchell shoved Cotty onto the office floor and under a counter where the metal box used for storing change was located. Cotty opened the metal box and explained to Mitchell that it contained only quarters, dimes and nickels. Cotty placed the change in a zipper bag and |j>MitcheIl shoved her with his knee as he searched the underside of the counter for an alarm.
Thereafter, Mitchell jerked Cotty up by the neck, put the cocked gun in her face and threatened, “Where is the money or I’m going to kill you?” Cotty and Beatty told Mitchell that the rest of the money was in a bank bag on the counter. After Mitchell ordered Beatty to retrieve it, B.F. led Beatty to the counter to get it. Beatty handed the locked bag to Cotty who attempted to retrieve the bank bag key when Mitchell again threatened her life. Cotty then unlocked the bag and told him that the bag contained approximately $5,000.
Cotty and Beatty were shoved to the floor and told to lie face down. As Cotty attempted to make a mental note of B.F.’s clothing description, Mitchell once again threatened her life. Beatty complied with Mitchell’s order to give the cash bag to B.F. When B.F went to the door and could not open it, Mitchell ordered Beatty to open the door for him. After Beatty complied, B.F. put the money in a store bag and ran out of the store. During B.F.’s escape, Mitchell held a gun to Cotty’s head and ordered her to wait thirty minutes before calling the police because he claimed to have two cousins outside who would kill her if she moved prior to that time. Beatty was able to crawl around to the office without being seen and called the police.
Police investigation implicated K.G., a twelve-year old, and another minor, B.G., in the offense.[1] Officers went to K.G.’s home with information that K.G.' had been given a share of the stolen money. “When questioned regarding his knowledge of the offense, K.G. presented police with $820 which he removed 13from behind wallpaper in the bathroom of his house. After grand jury indictment of K.G. as a principal in the armed robbery, the state instituted juvenile delinquency proceedings against the juvenile. When the court denied timely motions to vacate the adjudication and to reconsider the disposition, this appeal ensued.
Discussion

Sufficiency of the Evidence

On July 6, 2000, K.G. filed a Motion to Vacate Adjudication, pursuant to La. Ch.C. art. 894B(4), averring that the adjudication judgment was contrary to the law and evidence. On appeal, K.G. argues *720 error in the denial of that motion based upon the allegation that the evidence was insufficient to place K.G. at the scene of the armed robbery. Specifically, he points out that neither victim was able to identify K.G. as a participant in the robbery, that KG.’s sister and her friends testified K.G. was at home at the time of the robbery, and that no testimony showed KG.’s knowledge of the planning of the robbery. Finally, K.G. questions the credibility of the codefendants’ testimony which implicated him in the crime.
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first resolve the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La.1992); State v. Mickens, 31,737 (La.App.2d Cir.03/31/99), 731 So.2d 463, writ denied, 99-1078 (La.09/24/99), 747 So.2d 1118. The same rule should apply to juvenile adjudications. See, State in Interest of K.W., 93-716 (La.App. 5th Cir.02/09/94), 632 So.2d 5.
In a juvenile delinquency proceeding, the state’s burden of proof is the same as in a criminal proceeding against an adult-to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.C. art. 883. In a juvenile case, the reviewing court is constitutionally compelled to review both facts and law. La. Const, art. 5, § 10(A) and (B). However, the reviewing court |4must recognize that the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. Therefore, this court grants great deference to the juvenile court’s factual findings and credibility determinations and assessment of the weight of particular testimony. State v. S.B., Jr., 31,264 (La.App.2d Cir.09/25/98), 719 So.2d 1121. Not only does the standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) apply to juvenile delinquency adjudicatory hearings, but our state constitution mandates that we determine, after reviewing the record evidence, whether the juvenile court was clearly wrong in its fact-findings. State v. Redd, 445 So.2d 126 (La.App. 2d Cir.1984). See discussion, State in Interest of Cason, 438 So.2d 1130 (La.App. 2d Cir.1983).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Fuller, 32,734 (La.App.2d Cir.12/17/99), 759 So.2d 104, writ denied, 20-0159 (La.08/31/00), 766 So.2d 1273; State v. Gradick, 29,231 (La.App.2d Cir.01/22/97), 687 So.2d 1071.
| sArmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64A. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
At the adjudication hearing, Officers Jimmy Hamilton (“Hamilton”) and David *721 Morgan (“Morgan”) of the Homer Police Department testified that when they questioned KG. about the allegations of his participation in the crime, he led them to $320 hidden in his home. His mother offered a possible explanation for only $20 of that total.
Although neither victim could identify K.G. as a participant in the armed robbery, the testimony of KG.’s codefendants showed that K.G. acted as a lookout and provided the gun used in the offense.
B.F. related that on December 20, 1999, he was visiting B.G.’s home when at approximately 8:30 p.m., Mitchell arrived. Mitchell watched television with them for a while and then jumped up, colloquially expressed that he wanted to rob Bill’s Dollar Store, and said, “[Ljet’s go do it.” After Mitchell unsuccessfully tried to locate a gun, B.F. called KG. and told him that he needed to borrow one of KG.’s guns; K.G. immediately came to B.G.’s house with the gun and gave it to B.F. who in turn gave it to Mitchell. B.F. stated that they told KG. that they were “fixing to go hit Bill’s Dollar,” and KG. said he wanted to go with them. K.G. was told to “watch out” for them, and KG. agreed.
B.F. testified that he, Mitchell, B.G. and K.G. then went to B.F.’s house to get some bandanas to cover their faces and walked two or three blocks to Bill’s Dollar Store. They hid behind buildings for a long time, waiting for the customers | fito leave. After the robbery, Mitchell and B.F. ran out of the store with the money; at that time, B.G. was coming toward them, and K.G. was in the same place they left him. The four of them ran toward B.F.’s home by a back route. KG. ran to his home to return the gun, and when he returned, the four of them entered B.F.’s home. B.F.’s mother, sister and three brothers were at home. The four went into the laundry room to divide the money; B.G. and B.F. each got $1,000, KG. got $500 and Mitchell got the rest. B.F. testified that he gave about $800 of the money to his girlfriend’s sister to hold.
The girlfriend’s sister testified that she agreed to hold the money for a while but later turned it over to the police. B.F.’s girlfriend testified that after the robbery, she saw Mitchell and K.G. passing money between them.
B.F. admitted that he was charged as an adult for this armed robbery offense and believed that in exchange for his testimony in this matter, he would be restored to juvenile status for his part of the armed robbery.
B.G. also testified at the adjudication hearing. B.G. admitted that B.F. was at his house watching television on the evening of the robbery. Mitchell arrived about 5:00 p.m. and spoke with B.F., but B.G. did not hear the conversation. Mitchell left but returned at about 9:00 p.m., stating that “[H]e had a lick.” Mitchell showed B.G. and B.F. a gun. B.G. admitted discussing robbing Bill’s Dollar Store with Mitchell and B.F, and that it was stated KG. would be involved. B.G., Mitchell and B.F. got their “equipment” (a mask, bandanas, a stocking cap and a gun), met K.G. and went by B.F.’s girlfriend’s house to get some food for B.F. At the girlfriend’s house, the four of them had a discussion about the robbery, and then they all walked to the store.
B.G. testified that the four of them hid behind the store and waited about thirty minutes. After a discussion among them, it was decided that K.G. would stay outside, because he was too small to take part in the armed robbery. KG. |7agreed to stay outside and “watch out.” However, B.G. also stayed outside with KG. while Mitchell and B.F. went inside to commit the armed robbery. B.G. stated that he saw his brother and temporarily left the scene while KG. remained outside the store. When B.G. returned, Mitchell and B .F. were leaving the store, and the four of them ran to B.F.’s home. B.G. described how the money was divided at B.F.’s home.
*722 K.G.’s 16-year-old sister, C.G., testified that she was at home the evening of the armed robbery. Two friends were visiting her, and one friend was fixing C.G.’s hair. She stated that they sent K.G. to Bill’s Dollar Store to get a hair product for her, but he came back empty-handed, stating that the store was closed. K.G. returned to the store after it reopened, bought the hair product and returned home with the purchase. C.G. stated that K.G. then went to his bedroom in the back of the house to play a game and to watch her baby. C.G. and her friends stayed in the front room of the house until about midnight and did not see K.G. leave the house again. C.G. related that there was not a back door to the house. One of C.G.’s friends also testified, basically corroborating C.G.’s story. C.G.’s friend stated that she did not see KG. again that evening after he came back from the store the second time and went back to his room.
K.G’s codefendants’ testimony alone is sufficient to show that K.G. knowingly participated in both the execution and planning of the armed robbery by providing the weapon used to commit the offense, acting as a lookout for the perpetrators, and receiving a portion of the funds stolen. An accomplice is a competent witness to testify against his co-perpetrator even if the prosecution offers him inducements to testify; those inducements only affect the witness’s credibility. State v. Jetton, 32,893 (La.App.2d Cir.04/05/00), 756 So.2d 1206, and cases cited therein. The credibility of a codefendant’s testimony is not within the province of the court of appeal to decide. Id. Rather, credibility evaluations |sare well within the province of the trier of fact. Id. In this case, it is obvious that the judge believed KG.’s co-defendants’ testimony, which, though containing minor inconsistencies, generally corroborated the fact of KG.’s active participation in the offense and rejected the testimony of the alibi witnesses. We decline to disturb this credibility determination. When viewed in the light most favorable to the state, we find this evidence sufficient to convict KG. as a principal to armed robbery.

Application of Habeas Corpus and/or Motion to Quash

KG. argues that under La. Ch.C. art. 877, the proceeding was untimely commenced and should have been dismissed. Specifically, K.G. argues that the state failed to show “good cause” for the ninety-day delay between the time he denied the petition on February 9, 2000 and the adjudication hearing date of May 3, 2000.
La. Ch.C. art. 877 provides:
A. If the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within thirty days of the appearance to answer the petition.
B. If the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.
C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition.
D. For good cause, the court may extend such period.
This article is a mechanism for the state to obtain an extension of the time limits to commence the adjudication hearing by making a showing of good cause. State in Interest of R.D.C., Jr., 93-1865 (La.02/28/94), 632 So.2d 745.

First Continuance

On January 7, 2000, a continued custody hearing was held wherein KG. was present with his mother and court-appointed counsel. After hearing | ^testimony, the court found probable cause to charge K.G. as a principal to armed robbery and ordered KG.’s continued custody with the state. On February 9, 2000, the juvenile was appointed counsel, advised of the allegations against him, waived a formal reading of the charges against him and entered a denial to the allegations. Motions were *723 fixed for March 8, 2000, and that same date was tentatively set for the adjudication hearing. Thereafter, on March 8, 2000, the state requested a continuance, stating, “We’ve already discussed this with all parties including opposing counsel and consider it to be in the best interest of justice.” The matter was upset and continued until April 5, 2000. No formal objection was made by K.G.
The record shows that the defense did not object to the state’s first motion for a continuance on March 8, 2000. Indeed, the state’s request indicated that the defense was in agreement. It was not until April 5, 2000, the date of the state’s second request for continuance, that K.G’s counsel objected to the March 8, 2000 extension. However, at the May 25, 2000 review of the statement of facts submitted by the defense in support of the motion to dismiss, defense counsel admitted that he “acquiesced” to the continuance. Under these circumstances, we find no error in the court’s determination that the parties agreed to the March 8, 2000 continuance.[2] Second Continuance
At the April 5, 2000 proceeding, the state made an oral motion for a continuance. The juvenile’s counsel objected to the continuance and made an oral motion for relief under La. Ch.C. art. 877, because the adjudication was not held within thirty days of KG.’s appearance to answer the petition on February 9, 2000. ImThe juvenile’s counsel also asserted that he objected to the state’s request for a continuance on March 8, 2000.
The court ordered a written objection to be filed; the written motion to quash was filed on April 11, 2000 and the matter was set for May 8, 2000. On May 3, 2000, the court deferred ruling on the motion to quash and commenced hearing evidence on the adjudication hearing. On May 25, after the continuation of the adjudication hearing was completed, the court reviewed with the state and KG.’s counsel the statement of facts submitted in support of the motion to quash and continued the hearing on the motion to quash until June 1, 2000. On June 1, 2000, after the parties agreed that they had no further evidence to present on the issue of good cause and offered arguments in support of their positions, the court denied the motion to dismiss finding that the reasons given by the state for the continuances established good cause for the ninety-day delay.
Regarding the second continuance, K.G. makes two arguments on appeal. He reiterates his claim that the state failed to show good cause for this delay and that the deferment of the hearing on the motion to quash was patently prejudicial to K.G. and is reversible error.
We first note that because K.G. offered no contemporaneous objection to the order of procedure utilized by the trial court, and in fact, acquiesced to it, he cannot now raise this issue on appeal. La. C.Cr.P. art. 841; State v. D.J., 29,474 (La.App.2d Cir.04/02/97), 691 So.2d 839.
In support of the request for the April 5, 2000 continuance, the state asserted that it had not yet been able to secure the testimony of B.F. and B.G. because no formal plea agreement had yet been reached with the codefendants.
At the hearing on the motion to quash, the prosecutor made the following argument which summarizes his claim for good cause for the delay:
■J^The delays were in an effort to get co-defendants’ testimony and the only issue would be did the State wait too long to get the co-defendants’ testimony or was that not a justified delay. I can only argue to the Court, being as I am a *724 juvenile prosecutor, and felony prosecutors were involved, in addition another indigent defender attorney was appointed for the co-defendants, so there were basically four attorneys involved in this discussion, and it took some time to get the co-defendants’ testimony.
The defendants’ testimony was ... no agreement was reached, via myself or the felony prosecutors, until the day before the April trial setting. At that time, it was only a tentative agreement. No statements had been given, and nothing concrete was taken until approximately a week later, hence the earliest date that I had evidence to convict Mr. [K.G.] was the May setting, which we went to trial on.
Additionally, on May 25, 2000, the state filed into evidence correspondence dated April 11, 2000, from the Assistant District Attorney to B.F. and B.G.’s attorney which indicates that the parties were finalizing the codefendants’ plea agreements which included their agreement to testify in K.G.’s adjudication. Also submitted into evidence was a May 8, 2000 letter between these two parties which shows a final acceptance by the state of the plea agreement set forth in the April 11th letter.
From this evidence, the trial court determined that good cause existed for the delay. In State in Interest of R.D.C., Jr., supra, the supreme court cautioned against an unusually harsh definition of good cause and instructed a mindful consideration of those situations where causes beyond the control of the state may impinge on its ability to prepare for a hearing. Although K.G. has suggested that the state was the cause of the delay in obtaining the plea agreements with K.G’s co-defendants, it has presented no proof of that fact. Indeed, a letter placed into evidence by the defense (D-2), in support of the motion to quash, demonstrates the confusion and complexity which characterized this case due to the number of defendants involved. It is obvious that the trial court accepted the state’s explanation that the delay was beyond its control. Notably, trial of the case l^was commenced within the maximum ninety-day period allowed under La. Ch.C. art. 877. Being mindful of the overall short time in which the offense was tried, the seriousness and complexity attendant to the charged offense, in addition to the number and un-cooperativeness of the defendants in this case, we defer to the discretion granted to the trial court in these matters and find no error in the trial court’s determination.

Disposition Hearing

K.G. argues that because no evidence was adduced in accordance with La. Ch.C. art. 893 at the disposition hearing, he was deprived of his constitutional right to due process. Particularly, K.G. points to the district court’s failure to request evidence at the disposition hearing. Additionally, the juvenile contends that the district court showed bias in referring to the sentence the juvenile would receive if prosecuted as an adult and was confused about its role as “the people’s appointed protector of the lives of children.” Lastly, K.G. takes issue with the district court’s “consistent” disregard for the time delays set forth in La. Ch.C. art. 892.
Regarding the requirement of a disposition hearing, La. Ch.C. art. 892 provides:
Prior to entering a judgment of disposition, the court shall conduct a disposition hearing. The disposition hearing may be conducted immediately after the adjudication and shall be conducted within thirty days after the adjudication. Such period may be extended for good cause. More specifically, La. Ch.C. art. 893 adds in pertinent part:
A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.
B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the *725 predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not admissible at the adjudication hearing. Upon motion of |13the district attorney or the child, the court may hear testimony from the victim of the offense.
C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.
(Emphasis added.)
The purpose of a disposition hearing is to allow the court to hear evidence which will aid it in determining whether the juvenile is in need of treatment or rehabilitation. State ex rel K.H., 98-632 (La.App. 5th Cir.12/16/98), 725 So.2d 583.
Regarding the time delays, we recognize that the disposition hearing was not conducted within thirty days after the adjudication on June 1, 2000. The July 6, 2000 hearing date was three days, including the July 4th holiday, after the thirty-day deadline on July 3, 2000.
In State in Interest of T.T., 96-06 (La.App. 3d Cir.05/08/96), 677 So.2d 466, the court addressed a similar situation and concluded that a three-day delay beyond the La. Ch.C. art. 892 deadline was harmless error where prejudice is not shown. After recognizing that La. Ch.C. art. 892 provides no remedy for a violation of its provisions, the court utilized jurisprudential interpretations of La.C.Cr.P. art. 874, the adult procedural equivalent to La. Ch.C. art. 892, to determine the appropriate sanction to be imposed for unreasonable delay in sentencing and to find guidance on when those sanctions should be imposed. Although noting that the supreme court had determined that the sanction for an unreasonable delay in sentencing was the divestiture of the trial court’s jurisdiction to sentence the defendant in State v. McQueen, 308 So.2d 752 (La.1975), the court also observed that the comments to La.C.Cr.P. art. 874 clearly pointed out the probable reluctance by the supreme court to impose this harsh sanction “except in cases of extreme and clearly unjustified delay.” Consistent with this comment, the court |14noted, was the case of State v. Johnson, 363 So.2d 458 (La.1978), which declined to address the unreasonableness of the delay between trial and sentencing where the defendant had shown no prejudice.
Likewise, in the present case, K.G. has failed to allege or demonstrate any actual prejudice which resulted from the delay in sentencing. Indeed, he merely includes this argument amidst his claim for a new dispositional hearing. Moreover, from the record before us, we cannot determine that the small delay in sentencing in this case was extreme or clearly unjustified. Accordingly, we find that any error in the delay was harmless and decline to implement the drastic remedy of divesting the lower court of its power to sentence.
The provisions of La. Ch.C. art. 892 clearly mandate that the court conduct a disposition hearing. The article applies to juvenile armed robbery dispositions as well. State in Interest of D.L, 30,878 (La.App.2d Cir.06/24/98), 715 So.2d 623; State in Interest of C.D, 95-160 (La.App. 5th Cir.06/28/95), 658 So.2d 39. Aso, in pertinent part, disposition rules for armed robbery are set forth in La. Ch.C. art. 897.1, which provides:
B. Notwithstanding any other provision of law to the contrary, after adjudication of a felony-grade delinquent act based upon a violation of R.S. 14:64, armed robbery, the court shall commit the child to the custody of the Department of Public Safety and Corrections to be placed within a secure detention facility for the length of the term imposed *726 by the court at the disposition hearing without benefit of parole, probation, suspension of imposition or execution of sentence, modification, or furlough. (Emphasis added.)
Although in this case the trial court classified the proceedings as a disposition hearing, it is clear that no evidence of K.G.’s need of treatment or rehabilitation was adduced. Therefore, in effect, the court rendered a summary disposition without a hearing. Of course, La. Ch.C. art. 893 provides for a waiver of the presentation of evidence. In State in Interest of O.R., 96-890 (La.App. 5th Cir.02/25/97), 690 So.2d 200, the court vacated an immediate disposition made 11Bwithout a hearing, and remanded the case for a disposition hearing. Therein, the court noted that counsel’s failure to object did not amount to a waiver of the juvenile’s right to a hearing or his right to present evidence as set forth in La. Ch .C. art. 893. See, also, State In Interest of C.D., supra.
We recognize the factual distinction regarding the timing of the sentencing in State in Interest of O.R., supra, and the present case. Nevertheless, we determine that distinction to be of no moment to the resolution of the present issue because, as noted above, the trial court here also effectively rendered a summary disposition without a hearing, although not immediately after the adjudication. Considering these cited cases and the mandatory language utilized by the legislature in La. Ch.C. art. 893, we decline to interpret counsel’s mere silence as a waiver of the presentation of evidence by K.G. Accordingly, it is necessary that we vacate the disposition and remand for a disposition hearing or a clear waiver of those proceedings in accordance with La. Ch.C. arts. 892, 893 and 897.1(B).[3] In light of this determination, we pretermit discussion of KG.’s arguments relating to the excessiveness of the disposition.

Ineffective Assistance of Counsel

K.G. finally alleges that his counsel’s performance at critical stages of the lower court proceedings was constitutionally deficient. Particularly, the juvenile alleges that defense counsel’s failure to object to the first continuance and the deferral of the hearing on the motion to dismiss fell below the standard of reasonable competence required by prevailing professional standards demanded for attorneys in criminal cases and “caused him actual prejudice.” K.G. also contends that his counsel was ineffective because he failed to present evidence at | ifithe disposition hearing and to rebut the recommendations contained in the predisposition report.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the district court rather than by appeal. This rule has been applied in juvenile matters as well. State in the Interest of O.R., supra. This is because post-conviction relief creates the opportunity for a full evidentiary hearing pursuant to La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 32,993 (La.App.2d Cir.03/01/00), 754 So.2d 418. However, if the record fully discloses the evidence necessary to decide the issue, it may be considered on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Williams, supra.
Juvenile defendants, as well as adults, are entitled to effective assistance of counsel. State in Interest of D. McK., 589 So.2d 1139 (La.App. 5th Cir.1991); State in Interest of Jones, 372 So.2d 779 (La.App. 4th Cir.1979).
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh. den. 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), sets out a two-pronged *727 test for proof of ineffective assistance of counsel: the defendant must show that his attorney’s performance was deficient and that this deficiency prejudiced him so that the outcome would have been different absent counsel’s ineffectiveness. State in Interest of D. McK, supra.
Because we have granted K.G. a new disposition hearing, it is unnecessary that we address his claims of ineffective assistance of counsel relating to that proceeding.
Additionally, from the limited record before us, we find no merit to KG.’s remaining claims. The record shows that defense counsel failed to object to the March 8, 2000 continuance because the motion would have been premature. From |17our calculation of the time delays, this appears to have been a correct conclusion. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court gives great deference to the trial attorney’s judgment, tactical decisions and strategy, strongly presuming the accordance of reasonable professional assistance. State v. Jones, 33,657 (La.App.2d Cir.08/23/00), 765 So.2d 1191; State v. Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000). Under these circumstances, counsel’s failure to object to the March 8, 2000 continuance was a valid and reasonable trial strategy.
Regarding the hearing on the second continuance, K.G. argues that defense counsel’s failure to object to the timing of the hearing on the motion to dismiss prejudiced the trial court’s good cause determination in that had the trial judge not heard the evidence against KG. first, he “might have been released.”
We first note that La. Ch.C. art. 877 contains no provision regarding the timing of the hearing on the motion to dismiss. Because it is obvious that the good cause determination is an independent and unrelated inquiry from the issues involved in an adjudication, i.e., the trial evidence was unrelated to the good cause issue, it is difficult to comprehend how the order of these specific proceedings could have prejudiced KG.’s adjudication. Therefore, it would not have been unreasonable for trial counsel to agree to the order of the proceedings. Under these circumstances, counsel would have fulfilled his professional responsibility to K.G. by raising only the initial objection to the state’s request for a continuance.
Moreover, the defendant is required to show actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the |1Routcome of the trial would have been different. State v. Johnson, supra. Even were we to conclude that counsel’s actions in failing to object to the timing of the hearing were somehow deficient, our finding of good cause for the continuance, based upon the evidence and arguments presented at the motion to dismiss, eliminates the possibility of KG.’s pre-trial release. In light of this determination, any finding of prejudice is precluded. We, accordingly, find no merit to these claims.

Error Patent

In his final assignment of error, K.G. requests that this court review the record for errors patent. Although the Louisiana Children’s Code is silent as to error patent review of juvenile criminal proceedings, such a review is mandated by La. Ch.C. art. 104 and La.C.Cr.P. art. 920. State ex rel. L.T., 99-487 (La.App. 3d Cir.10/13/99), 747 So.2d 148. Nevertheless, a request for error patent review is considered unnecessary by this court because such a review is made automatically in all criminal cases. *728 State v. Bryant, 29,344 (La.App.2d Cir.05/07/97), 694 So.2d 556.
In light of our reversal of the disposition, it is unnecessary that we conduct error patent review on either the disposition or disposition proceedings. However, we note that when K.G. appeared to answer the petition at the February 9, 2000, hearing, he was represented by court-appointed counsel, and the transcript indicates that his mother was not present. The court minutes for that date state that the juvenile was advised of the allegations of the petition, “and his rights in the premises.” However, the transcript of that proceeding shows that he was advised only of his right to counsel and informed that counsel had been appointed for him. Counsel for the juvenile then waived “any formal reading” and denied the allegations of the petition.
|19La. Ch.C. art. 855 requires, in part, that the court must first determine if the child is capable of understanding statements about his rights under this Code, and if capable, the court shall then advise him of the following items:
(1) The nature of this delinquency proceeding.
[[Image here]]
(3) His right to an adjudication hearing.
[[Image here]]
(5) His privilege against self-incrimination.
(6) The range of responses authorized under Article 856.
(7) The possible consequences of his admission that the allegations are true, including the maximum and minimal dispositions which the court might impose pursuant to Articles 897 through 900.
In State in the Interest of J.G., 94-194 (La.App. 5th Cir.07/26/94), 641 So.2d 633, the court held that it was an error patent for the record to fail to reflect that the juvenile was advised of his rights when he appeared to answer the allegations of the delinquency petitions; however, the error was found harmless as the juvenile was represented by counsel and pled not guilty to the charges against him.
We agree with this determination and apply it to this case. Accordingly, we find that the failure of the trial court to specifically advise K.G. of each of the above-enumerated rights was harmless error because the juvenile was represented by counsel and pled not guilty.
CONCLUSION
Noting no other errors patent, and considering the foregoing, the adjudication is affirmed and the disposition is vacated. The case is remanded for a new disposition hearing in accordance with these reasons.
ADJUDICATION AFFIRMED; DISPOSITION VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS.

. A confidential informant implicated B.G. in the crime. During a traffic stop of a vehicle in which B.G. was present, police patted down B.G. and discovered $730 on his person. The money was seized and B.G. was advised that he was implicated in the armed robbery and taken into custody. After giving inconsistenl statements regarding the money, B.G. eventually confessed to the armed robbery. Upon further investigation, police learned from B.F.’s girlfriend, R.D., that she saw four individuals, including K.G., dividing the money on the night of the robbery.

. The fact that on March 8, 2000, a pro tem Judge presided over the proceedings would have likewise been an appropriate cause for delay which was beyond the control of the state because it was anticipated that these proceedings would have taken longer than the remaining portion of that day and could have potentially created a situation in which the matter could not have been completed by the presiding judge.

. We recognize that La. Ch.C. art. 901(E) excludes armed robbery from the application of the dispositional guidelines of that article but not the requirement of a disposition hearing and consideration of any evidence contemplated by La. Ch.C. art. 893.