STATE OF LOUISIANA IN     *       NO. 2025-CA-0833
THE INTEREST OF Z.B.

                    *  

                       COURT OF APPEAL

                    *  

                       FOURTH CIRCUIT

                    *  

                       STATE OF LOUISIANA

             * * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2025-156-06-TR-E, SECTION "E"
**Honorable Desiree Cook-Calvin**
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Karen K. Herman, Judge Nakisha Ervin-Knott, Judge
Monique G. Morial)

Annette Fuller Roach
CINC APPELLATE PROJECT OF THE OFFICE
OF THE STATE PUBLIC DEFENDER
ROACH & ROACH, APLC
2720 Rue de Jardin, Suite 100
Lake Charles, LA 70605


      COUNSEL FOR APPELLANT

Jules A. Fontana, III
DEPARTMENT OF CHILDREN AND FAMILY SERVICES
BUREAU OF GENERAL COUNSEL
1450 Poydras St., Suite 1600
New Orleans, La 70112


      COUNSEL FOR APPELLEE

                                    **AFFIRMED**
                             **February 24, 2026**

KKH
NEK
MGM

Appellant, M.B. ("Appellant"), appeals the trial court's judgment, rendered September 17, 2025 and signed October 8, 2025, which terminated his parental rights as to his minor child, Z.B, and declared Z.B. eligible for adoption.[1] For the reasons that follow, we find no manifest error in the trial court's determination and affirm the trial court's judgment.

**FACTS AND PROCEDURAL HISTORY**

Z.B. was born on August 12, 2024, and tested positive for fentanyl and experienced withdrawal symptoms. The mother also tested positive for fentanyl and admitted to using heroin throughout her pregnancy.[2] The record shows that Appellant likewise admitted to using heroin. Thereafter, on or about August 30, 2024, Z.B. came into the care of the Department of Child and Family Service ("DCFS").[3]

---

[1] This opinion will use the initials of the minor child and the parent to protect the minor's identity and ensure the parties' privacy. *See* Rule 5-2, Uniform Rules—Courts of Appeal; *State in Int. of E.R.,* 2022-0754, p. 1, (La. App. 4 Cir. 2/7/23), 357 So.3d 892, 894, n. 1.

[2] The mother's initials are also M.B.

[3] The trial court stated that Z.B. was in DCFS custody since August 28, 2024. However, the DCFS and Appellant indicate in their briefs that Z.B. was placed into DCFS custody on August 30, 2024.

A continued custody hearing occurred on September 4, 2024, and after considering the testimony and information provided, the hearing officer found "probable cause for the issuance of the hold order and that the child, [Z.B.] is in need of care, abused or neglected."[4] The record notes that Appellant was absent for the hearing although his attorney stated "he was aware of the hearing." The hearing officer noted that the DCFS had made "reasonable efforts to prevent or eliminate the need for the removal of the child" but concluded returning Z.B. to her father or mother was "contrary to her safety, health, and well-being." The trial court adopted the recommendations made by the hearing officer and declared it to be the judgment of the court on September 19, 2024.

A child in need of care petition was filed on September 24, 2024. The matter came for hearing on November 4, 2024, wherein Z.B. was adjudicated a child in need of care ("CINC") as to her father and ordered to remain in the custody of DCFS. [5] The judgment noted that Appellant's curator offered a note of evidence and "performed a due and diligent search for the absent father." It also noted that the Child Protective Investigator, Anthony Reed, testified regarding Appellant's heroin use. The judgment further provided that Appellant was "aware that the child is in foster care and has not appeared in [c]ourt" and that Appellant's "whereabouts remain unknown."

At the disposition hearing of December 12, 2024, the trial court heard testimony from DCFS employee, Maya Samuels, regarding the case plan and the case plan goal for the family. Appellant was absent from the hearing. The

---

[4] The continued custody hearing came before hearing officer, Derek Terrell Russ.

[5] An adjudication hearing as to Z.B.'s mother occurred on November 14, 2024 and the trial court found Z.B. to be a CINC as to her mother. Judgment to that effect was signed on December 4, 2024.

disposition judgment, signed January 6, 2025, noted that the case plan goal was reunification with the concurrent goal of adoption.

The first case review hearing was held on March 11, 2025. Appellant was also absent from this hearing. According to the judgment from this hearing, Jerrica Hasty-Ackerson of the DCFS testified that "there has been no contact with the parents." The trial court noted that the DCFS has made "reasonable efforts in accomplishing the case plan goal of reunification with the concurrent goal of adoption." The trial court ordered that the child remain with the DCFS and ordered "provisional placement through ICPC [Interstate Compact for the Placement of Children]" for the maternal aunt in Montana and the paternal aunt in Texas.

On April 22, 2025, the matter came for hearing for the second case review. The record provides Schameka Santa-Cruze of the DCFS testified "there has been no contact with the parents and no visits" and the DCFS recommended adoption as the case plan goal instead of reunification. The judgment from the hearing, dated April 30, 2025, ordered that the case plan goal be changed to adoption for Z.B. The judgment further noted that Appellant was absent from the hearing.

In June of 2025, the DCFS filed a petition to terminate the parental rights of both the mother and Appellant based on abandonment under La. Ch.C. art. 1015(4). On July 15, 2025, the matter came for answer hearing and pre-trial conference. Appellant was not present. Appellant through counsel entered a verbal denial to the allegations of the petition.

A permanency planning hearing was held on August 6, 2025. The judgment, signed September 19, 2025, noted that the DCFS placed the child with the paternal

aunt and that the "child seems to be in a good placement family." It also noted that the parents received notice for the termination of parental rights trial.[6]

The termination hearing as to Appellant[7] was held on September 17, 2025.[8] The State offered the following documents into evidence: the birth certificate of Z.B., which listed Appellant as the father; seven CINC judgments from September 2024 to April 2025; a putative father registry certificate, dated June 17, 2024;[9] and a certificate of no acknowledgement legitimation of filiation, dated August 12, 2024.[10]

DCFS case worker, Kimberly Major ("Major"), also provided testimony at the hearing. She stated that Z.B. came into DCFS care in August 2024 and that Appellant is the father of Z.B. She testified that she was the Child Welfare Specialist assigned to Z.B.'s case, starting April 2025.

Major said there was no visitation schedule for Appellant. She testified that she was never contacted by Appellant concerning visitation of Z.B. or otherwise. She said that to her knowledge Appellant has not attempted to communicate or visit the child.

_____

[6] Both Appellant and mother appeared to have been present for this hearing.

[7] The record indicates that a termination hearing as to the mother occurred on September 4, 2025 and the trial court took the matter under advisement. On September 9, 2025, the trial court provided oral reasons for terminating the parental rights of the mother. A judgment terminating the mother's rights was executed on October 3, 2025. Her appeal is pending before this Court in Case No. 2025-CA-0771.

[8] The trial on the termination of parental rights initially came before the trial court on September 9, 2025, wherein the trial court indicated that Appellant wished to enter into a stipulation that he was willing to terminate his parental rights voluntarily. However, at the hearing Appellant indicated he was unsure, and the trial court then continued the matter.

[9] The putative father registry certificate from the Department of Heath of Louisiana showed that no other person had registered as Z.B.'s putative father.

[10] The certificate of no acknowledgement from the Clerk of Court for Orleans Parish Juvenile Court certified that there had been no acknowledgement, legitimation, or filiation filed for ZB.

Major testified that since she has been on the case, she had spoken with Appellant on one occasion in June of 2025. In the conversation, she explained to Appellant that his parental rights may be terminated and why. However, Major noted that she "wasn't sure if [Appellant] understood." She explained that Appellant "didn't have any comment[,] it was just ['] okay.[']"

She stated that the DCFS believes it is in the best interest of the child to terminate Appellant's parental rights. Major testified Z.B. has an adoptive placement in the home of Appellant's sister in Texas. Major said Appellant "had no concerns" about placing Z.B. with his sister and Appellant indicated that it was "his wish that his daughter … live with his sister."

She testified Z.B. is adjusting well in her adoptive placement and that her physical, emotional, and educational needs are being met. She noted that Z.B. also goes to daycare daily. Z.B. has been living with Appellant's sister since July 11, 2025.

On cross-examination, Major admitted that while she transported Z.B. to Texas for her adoptive placement, she had not returned to Texas to see how Z.B. is doing. She conceded that while she had spoken to Appellant once on the telephone, she had seen Appellant three times when the termination proceedings were previously scheduled and did not speak to him.

Major stated when she spoke with Appellant in June 2025, it was on the phone that he shares with the mother of Z.B. She admitted that she did not advise Appellant that he could have the opportunity to visit with his child nor any service to work toward reunification. However, the record shows in the time period Major was in charge of overseeing Z.B.'s case, the goal was no longer reunification but adoption.

5

Appellant did not present evidence or call any witnesses.

Following testimony and argument of counsel, the trial court ruled as follows:

> Based on the evidence that was adduced at the trial … the court hereby terminates the parental rights of the father … [M.B.] … [T]he court notes that the child has been in DCFS custody based on the underl[lying] CINC case judgments … since August of 28th -- August 28th, 2024, which is a period of time [in excess] of one year we note that this child …. was born August 12th, 2024, [we] also note from the testimony ... in this case that … this child is an infant and … based upon the age and stage of life this child is over – little bit over one (1) years old and has been in custody since … the beginning of this case … since August 28th, 2024, that it's in her best interest to obtain permanency … the court notes that the child is placed with the parental aunt … [and] has been placed there since June of this year and the[re is] testimony that the child is progressing well in that placement.

> The court finds that [it is] in the best interest of the child to … receive permanency in this case… the court notes that the testimony from the [case] worker was that there had been no contact with the child and the father … and also the court notes that under the underl[ying] CINC case that curators were appointed to locate the father to no avail … during the entirety of that case and the child should not have to wait to receive permanency in this case it's in the best interest of the child to obtain permanency … based on the age and stage of life ... [the] child needs a safe place to be a safe home and … the court terminates [the] rights of the father based on that.

> … So that pursuant to … 1015 subsection four (4) that as of the date of the petition was filed the father has … failed to maintain sufficient contact with the child for six (6) consecutive months… I don't believe that the agency made a case for the financial contributions based on the witness they had but I do believe they … met the … burden of [] clear and convincing evidence that the father failed to maintain[] contact for [] six (6) consecutive months. [11]

Judgment terminating Appellant's parental rights was executed October 8, 2025.[12] This appeal followed.

---

[11] The record shows that the hearing commenced at 1:15 p.m. and Appellant was not present initially. However, Appellant appeared at 2:44 p.m. during closing arguments. The trial court noted it would not "require [Appellant] to take the stand at [that] point."

**DISCUSSION**

"The termination of the legal relationship between a child and its natural parent 'is one of the most drastic actions the state can take against its citizens.'" *State in Int. of J.V.I.,* 2023-0557, p. 8 (La. App. 4 Cir. 11/13/23), 377 So.3d 408, 414 (quoting *State in the Int. of A.L.D.*, 2018-1271, p. 4 (La. 1/30/19), 263 So.3d 860, 863). However, the "primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven." *Id.* (quoting *State ex rel. J.A.,* 1999-2905, p. 8 (La. 1/12/00), 752 So.2d 806, 811); *see also State in Int. of C.F.*, 2017-1054, p. 16 (La. 12/6/17), 235 So.3d 1066, 1075 (the "interests of the parent must be balanced against the child's interest, but the child's interest is paramount").

"Title X of Louisiana's Children Code governs the involuntary termination of parental rights and the certification of children for adoption." *Id.* "The purpose in instituting the involuntary termination of parental rights is to provide protection to a child whose parent is unwilling or unable to provide adequate care for the child's welfare and needs and to achieve stability and permanence for the child." *Id.* (citing La. Ch.C. art. 1001; *State ex rel J.A.*, 1999-2905, p. 8, 752 So.2d at 811). "Termination of parental rights is to be considered the first step toward permanent placement of the child in a safe and suitable home, and if possible, to achieve the

---

[12] The terms of the judgment indicate that the trial court determined Z.B. abandoned both for the Appellant's failure to provide significant contributions to the child's care for six months and for the failure to maintain contact with the child by not visiting or communicating with the child for six months. However, the transcript is clear that the trial court found grounds for termination based solely on Appellant's failure to maintain contact under La. Ch.C. art 1015(4)(b). *See State in Int. of W.V.,* 2018-0001, p. 8 (La. App. 4 Cir. 4/18/18), 246 So.3d 34, 37 (providing that generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails).

child's adoption." La. Ch.C. art. 1004; *see also State in Int. of K.C.,* 2025-0529, p. 6 (La. App. 4 Cir. 10/14/25), 423 So.3d 1109, 1112.

The DCFS may seek to terminate the rights of a parent under La. Ch.C. art. 1004(D)(3), which allows the department to petition for the termination of parental rights when the "child has been abandoned and termination is authorized by Article 1015(4)."

La. Ch.C. art. 1015(4) provides, in part:

> Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
> . . .
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) *As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.*[13]

(emphasis added).

This Court in *State in Int. of N.G.,* 2025-0633, p. 3 (La. App. 4 Cir. 12/12/25), --- So.3d ----, 2025 WL 3562726 at *1, outlined the standard of review and burden of proof required in a termination of parental rights proceeding as follows:

> The appropriate standard of appellate review for a [termination of parental rights] proceeding is manifest error. *State, In the Interest of L.R.S.*, 38,812-JAC, p. 7 (La. 6/23/04), 877 So.2d 1040, 1045-46. Appellate review is only *de novo* when the trial court applies incorrect prejudicial principles of law. *Id.* at 1046.
>
> Termination of parental rights is appropriate when the evidence satisfies any one of the statutory grounds for termination under La. Ch.C. art[.] 1015. *See State, In the Interest of J.H. v. R.F.H.*, 572

---

[13] DCFS's petition asserts ground for termination based on La. Ch.C. art. 1015(4)(b) and (c), however, the trial court granted termination under La. Ch.C. art. 1015(4)(b).

So.2d 629 (La. App. 3 Cir. 1990); *State, In the Interest of Townzen*, 527 So.2d 579 (La. App. 3 Cir. 1988); *State, In the Interest of Jones*, 567 So.2d 664 (La. App. 4 Cir. 1990). La. Ch.C. art. 1015 provides that termination of the parental rights must be granted if all elements of any one of the alleged sections of the termination statute was proven by "clear and convincing evidence." *State, In the Interest of C.P.*, 463 So.2d 899, 904 (La. App. 2 Cir. 1985). "'Clear and convincing' evidence needs more than a 'preponderance,' but less than 'beyond a reasonable doubt.'" *State, In the Interest of G.K.*, 24-0163, p. 9 (La. App. 4 Cir. 6/26/24), 399 So.3d 433, 440, *writ denied*, 24-00947 (La. 9/17/24), 392 So.3d 891 (citations omitted). The existence of the disputed fact must be highly probable or much more probable than its nonexistence under the "'clear and convincing'" standard. *Id.*, pp. 9-10, 399 So.3d at 440 (citations omitted).

In his brief, Appellant contends that the trial court erred in concluding that the State had established, by clear and convincing evidence, grounds for terminating his parental rights. Appellant also argues that the trial court erred in determining that the termination of his parental rights was in the best interest of the child.[14]

As noted above, parental rights can be terminated for failure to keep in contact with the minor children for a six-month period, consecutively. La. Ch.C. art. 1015(4)(c).

Z.B. was born addicted to fentanyl in August 12, 2024, and both parents admitted to abusing heroin. Z.B. was subsequently taken into DCFS custody. Additionally, the testimony of Major, the DCFS case worker assigned to Z.B.'s case, shows that Appellant has not attempted to visit with or contact Z.B. for over a year. The CINC judgments further provide there were no efforts made by either parent to contact or visit the child since Z.B came into DCFS custody. As such, the

---

[14] In his brief, Appellant, in a footnote stated that the DCFS reports were included in the appellate record but were not introduced at the termination hearing. Appellant thus indicated that he would be submitting a motion to strike. However, no motion to strike was filed. Nevertheless, even without the DCFS reports, we find that the record supports the trial court's termination of Appellant's parental rights.

DCFS established that Appellant failed to maintain contact with the child by visiting or communicating with her for six consecutive months. Appellant offered no evidence to dispute his absence of contact with Z.B. We thus find that the DCSF presented clear and convincing evidence that justifiable grounds exist to terminate Appellant's parental rights under La. Ch.C. art. 1015(4)(c). As such, the trial court did not manifestly err in terminating Appellant's parental rights based on abandonment.

We likewise find that the trial court was correct in determining that the termination of Appellant's parental rights was in the best interest of Z.B. *State in Interest of C.F.,* 2017-1054, p. 11, 235 So.3d at 1072 (after at least one of the statutory grounds of termination is proven by clear and convincing evidence, the "trial court must determine whether the termination is in the best interest of the child").

As noted herein, Z.B. was born substance affected and was placed in DCFS custody shortly after her birth. For over a year, Appellant has not attempted to establish any relationship with Z.B. or contact Z.B. Moreover, the record shows that Appellant "uses drugs, in particular heroin." The CINC judgments also document Appellant's knowledge that Z.B. was in DCFS custody and his consistent failure to appear for hearings.[15] The judgments further indicate that the DCFS also made reasonable efforts to locate Appellant as well as reunite the child with the parents before changing the case plan goal to adoption. Also, Major testified Z.B. has been living with her paternal aunt (and her adoptive placement) since July 2025 in Texas. She stated Z.B. attends daycare daily and that her

---

[15] The record shows that although there were numerous hearings since Z.B. was placed into DCFS custody, the first appearance Appellant made was at the permanency planning hearing on August 2, 2025, and then the termination proceedings in September 2025.

physical, emotional, and educational needs are being met. Appellant did not produce any evidence to controvert this testimony. Moreover, Major stated Appellant had expressed his desire for his daughter to live with his sister. She also testified that the DCFS's position is that it is in the best interest of Z.B. for Appellant's parental rights to be terminated. Further, the record shows that the same trial judge presided over all of the hearings and was thus familiar with the specifics of the case.

The Louisiana Supreme Court has acknowledged that "children have the right to live in a safe, secure environment and to be reared by someone who is capable of caring for them." *State ex rel. J.M.*, 2002-2089, p. 15 (La. 1/28/03), 837 So.2d 1247, 1256. Children also have a need for permanency and stability. *Id*. Based on the foregoing, we cannot say that the trial court manifestly erred in concluding it was in the best interests of Z.B. to terminate Appellant's parental rights and certify Z.B. for adoption.

**CONCLUSION**

For the reasons set forth above, we find that the DCFS met its burden of proving abandonment pursuant to La. Ch.C. art. 1015(4) by clear and convincing evidence such that the termination of Appellant's parental rights was warranted. We further find that the trial court did not manifestly err in concluding that it was in Z.B.'s best interest to terminate Appellant's parental rights, allowing Z.B. to be free for adoption. Accordingly, we affirm the trial court's judgment.

**AFFIRMED**